1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                      EASTERN DISTRICT OF CALIFORNIA

10

11   BURLEY D. TOMPKINS,              No.  2:12-cv-01481 JAM-GGH

12              Plaintiff,

13        v.                          **ORDER GRANTING DEFENDANT'S
                                      MOTION TO DISMISS IN PART AND**
14   UNION PACIFIC RAILROAD           **DENYING IN PART**
     COMPANY, a corporation,
15

16              Defendant.

17

18        This matter is before the Court on Defendant Union Pacific

19   Railroad Company's ("Defendant") Motion to Dismiss the first and

20   second causes of action of Plaintiff's First Amended Complaint

21   (Doc. #7).  Plaintiff Burley Tompkins ("Plaintiff") opposes the

22   motion (Doc. #9) and Defendant replied (Doc. #14).[1]  For the

23   reasons set forth below, Defendant's motion is GRANTED in part

24   and DENIED in part.

25   ///

26

27   [1] This motion was determined to be suitable for decision without
     oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled
28   for January 23, 2013.

                                    1

1  ///

2              I. FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

3       Defendant previously moved to dismiss Plaintiff's first and

4  second causes of action of Plaintiff's initial Complaint and

5  that motion was granted with leave to amend (Doc. #16).  On

6  October 19, 2012, Plaintiff filed a First Amended Complaint

7  ("FAC") (Doc. #17).  In the FAC, Plaintiff alleges seven causes

8  of action pursuant to the Federal Employers' Liability Act

9  ("FELA"), 45 U.S.C. §§ 51-60:

10 (1) negligence in 1998; (2) negligence—deprivation of medical

11 care in 1998 in violation of 49 C.F.R §225.33; (3) negligence in

12 2011; (4) violation of the Federal Safety Appliance Act, 49

13 U.S.C. §§ 20301-20306; (5) violation of the Federal Locomotive

14 Inspection Act, 49 U.S.C. §§ 20701-20703; (6) Violation of

15 Federal Safety Regulation, 49 C.F.R. § 229.45; and (7) Violation

16 of Federal Safety Regulation, 49 C.F.R. § 229.13. Defendant once

17 more moves to dismiss the first and second causes of action.

18      A.   First Cause of Action—Negligence in 1998

19      Plaintiff alleges that in or about August through October

20 1998, he was working for Defendant at Defendant's Oroville yard

21 near Oroville, California.  During work, a trespasser startled

22 him while he was releasing the handbrakes of an open-top gondola

23 car.  As a result, he fell from the railcar and sustained a back

24 injury.

25      Plaintiff further alleges that he timely reported his back

26 injury to Defendant's Manager, Marvin Dunn, who harassed,

27 intimidated and threatened Plaintiff in order to discourage and

28 prevent Plaintiff from timely filing an on-duty injury claim and

1   seeking proper medical treatment.  In addition,

2

3   throughout his employment with Defendant, Plaintiff allegedly

4   endured ongoing express and implied threats by railroad

5   management to terminate him if he filed an on duty injury

6   report.  Specifically, Plaintiff alleges he was aware of the

7   following threats and actions:

8       1.  In 1998, Dunn told Plaintiff that he would be fired if
            he reported the injury and told him, "[I]f you want your
9           car, your house, a college education for your kids, get
            it fucking figured out and get it fucking figured out
10          quick."

11      2.  Plaintiff received letters from Defendant asking him to
            participate in a "long term back/spine study."
12

13      3.  From 1998 through 2003, Dunn continued to remind
            Plaintiff of the consequences of reporting an injury by
14          asking Plaintiff, "How's your back feeling?" and remind
            Plaintiff of the Personal Attention List ("PALS
15          Program") for new hires who have suffered an injury.

16      4.  Dunn received bonuses for finding cause to fire
            employees.
17

18      5.  Defendant fired Armando Corona, Plaintiff's fellow
            employee and classmate, for reporting his on-duty
19          injury.  Corona was later reinstated.

20      6.  In 2008, Corona was intimidated and harassed by
            management, and told not to report a 2008 injury.
21

22      7.  Dunn instructed a co-employee, Emidio Gonzalez, not to
            turn in a 2000 injury report.  Further, after turning in
23          a 2000 and 2005 injury report, Gonzalez was investigated
            by management, followed by personal investigators, and
24          harassed and scrutinized under the PALS Program.

25      8.  Dunn physically intimidated Plaintiff's fellow
            classmate, Wade Wright, for mentioning that he sustained
26          an on-duty injury.  Wright also had managers show up at
            his house at all hours demanding to discuss the injury
27          report.

28      9.  In 2002, Dunn was found to have falsified documents to

3

1             fire employees in order to collect his bonuses.

2

3      10. Management told co-employee Tony Truijilo that he would
4           be fired for reporting an injury.  Dunn told Truijilo
          that he, Dunn, would lose his bonus over it.

5      11. In the early 2000s, Dunn manipulated the injury report
          of Rob Thinglestadt and charged him for violating the
6           rules.  After his injury, Dunn harassed Thinglestadt at
          the hospital.
7

8      12. In the early 2000s, Scott Loyd was injured and Dunn
          threatened to terminate Loyd if he reported his injury.
9

10      13. After 2003, Plaintiff believed Dunn would terminate him
          if he reported an injury or filed a suit.
11

12      14. In 2004, John Eutsler, after an injury, was harassed,
          intimidated, and scrutinized under the PALS Program.
13

14      15. In 2005, Scott Cairns and Cairns's conductor were both
          harassed and intimidated after the conductor reported an
15           on-duty injury.

16      16. Between early 2000s and 2011, Plaintiff was aware of
          other employees who were terminated and/or threatened
17           with termination for reporting on duty injuries.

18      17. In 2011, Plaintiff suffered another on duty injury.

19      18. In June 2011, Defendant's manager, Eric Bennett, knowing
          of Plaintiff's 1998 and 2011 injuries, asked Plaintiff,
20           "[A]re you sure that you want to turn-in these injury
          reports?" and warned Plaintiff that, "It's bad enough to
21           turn in [the 2011] injury, but if you turn in this
          [1998] injury report, they will have your job for this."
22

23     B.     Second Cause of Action—Deprivation of Medical Care in
        1998
24

25      Plaintiff alleges that he attempted to timely report his

26 injury to Defendant, but Defendant's manager harassed and

27 intimidated him by threatening to terminate him if he made an

28 on-duty injury claim, thereby violating 49 C.F.R. §229.33.

1  Defendant intended to discourage and prevent Plaintiff from

2  timely filing an on-duty injury claim and from seeking proper

3  medical treatment until the statute of limitations had run.

4  Defendant also prevented Plaintiff from seeking and receiving

5  proper medical treatment from in or about August through October

6  1998 until about April 2010.

7

8                          II.  OPINION

9       A.   Legal Standard

10      A party may move to dismiss an action for failure to state

11 a claim upon which relief can be granted pursuant to Federal

12 Rule of Civil Procedure 12(b)(6).  In considering a motion to

13 dismiss, the court must accept the allegations in the complaint

14 as true and draw all reasonable inferences in favor of the

15 plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974),

16 overruled on other grounds by Davis v. Scherer, 468 U.S. 183

17 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972).  Assertions that

18 are mere "legal conclusions," however, are not entitled to the

19 assumption of truth.  Ashcroft v. Iqbal, 556 U.S. 662, 678

20 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555

21 (2007)).  To survive a motion to dismiss, a plaintiff needs to

22 plead "enough facts to state a claim to relief that is plausible

23 on its face."  Twombly, 550 U.S. at 570.  Dismissal is

24 appropriate where the plaintiff fails to state a claim

25 supportable by a cognizable legal theory.  Balistreri v.

26 Pacifica Police Department, 901 F.2d 696, 699 (9th Cir. 1990).

27      Upon granting a motion to dismiss for failure to state a

28 claim, the court has discretion to allow leave to amend the

5

1  complaint pursuant to Federal Rule of Civil Procedure 15(a).

2  "Dismissal with prejudice and without leave to amend is not

3  appropriate unless it is clear . . . that the complaint could

4  not be saved by amendment." Eminence Capital, L.L.C. v. Aspeon,

5  Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).

6      B.   Judicial Notice

7      Defendant requests the Court to take judicial notice of

8  employee personnel data for Harold Dunn, who is mentioned in

9  the FAC, to show that Defendant no longer employs him (Doc.

10 #7).  Courts may consider extrinsic evidence when "plaintiff's

11 claim depends on the contents of a document, the defendant

12 attaches the document to its motion to dismiss, and the

13 parties do not dispute the authenticity of the document."

14 Knievel v. ESPN, 393 F.3d 1069, 1076 (9th Cir. 2005).

15 Accordingly, the Court GRANTS Defendant's request for judicial

16 notice pursuant to Federal Rule of Evidence 201.

17     C.   Discussion

18          1. Equitable Estoppel—First and Second Causes of Action

19     Defendant once again moves to dismiss Plaintiff's first and

20 second causes of action for failure to plead sufficient facts to

21 estop Defendant from asserting the statute of limitations.  Both

22 parties agree that the injury alleged in Plaintiff's first and

23 second causes of action occurred in 1998 and the claims would be

24 barred by the three-year statute of limitations unless an

25 equitable doctrine, either equitable tolling or equitable

26 estoppel, applies.  Further, Plaintiff does not dispute that

27 equitable tolling does not apply in this case.  Accordingly, the

28 Court addresses only the equitable estoppel issue.

1

2

3          Equitable estoppel focuses on the defendant's affirmative

4   actions that prevent a plaintiff from filing a suit.  Keenan v.

5   BNSF Ry. Co., C07-130BHS, 2008 WL 2434107, at *6 (W.D. Wash. June

6   12, 2008).  To determine whether equitable estoppel applies,

7   courts consider several factors, "such as whether the plaintiff

8   actually relied on the defendant's representations, whether such

9   reliance was reasonable, whether there is evidence that the

10  defendant's purpose was improper, whether the defendant had

11  actual or constructive knowledge that its conduct was deceptive,

12  and whether the purposes of the statute of limitations have been

13  satisfied."  Id. (citing Santa Maria v. Pacific Bell, 202 F.3d

14  1170, 1177 (9th Cir. 2000)).  Defendant argues that estoppel is

15  not appropriate in this case because (a) retaliatory statements

16  are not sufficient for equitable relief from the statute of

17  limitations, (b) the facts alleged do not establish Plaintiff's

18  reasonable reliance, and (c) the facts alleged do not show that

19  the purpose of the statute of limitations has been satisfied.

20              a. Retaliatory Statements

21       Plaintiff argues that threats of termination, harassment,

22  and intimidation, such as those alleged in the FAC, are

23  sufficient to invoke equitable estoppel.  Plaintiff cites two

24  cases in support of his contention.  See Longo v. Pittsburgh & L.

25  E. R. Co., New York Cent. Sys., 355 F.2d 443, 444 (3d Cir. 1966)

26  (applying FELA); George v. Hillman Transp. Co., 340 F. Supp. 296,

27  299-300 (W.D. Pa. 1972) (applying the Jones Act, which relies on

28  the FELA limitations statute).  In Longo, the plaintiff claimed

1 that the defendant urged him not to sue the railroad and told him

2 that he would lose his job if he filed a suit against the

3 company.  Longo, 355 F.2d at 444.  Based in part on these

4 statements, the court reversed the district court and held that

5 the evidentiary record revealed a triable issue of fact on

6 whether the defendant's own conduct was such to estop the

7 defendant from asserting the statute of limitations as a defense.

8 Id. at 445.  In George, the plaintiff contended that the

9 defendant should be estopped from asserting the statute of

10 limitations because she was ignorant of her injuries, ignorant of

11 her right to sue, and feared losing her employment.  George, 340

12 F. Supp. at 299.  The court held that only plaintiff's fear of

13 losing her employment was attributable to the defendant, but

14 estoppel was not warranted because there was no evidence to show

15 that such fear was induced by any of the defendant's action.  Id.

16 at 300.

17      Moreover, there are cases outside of FELA that suggest that

18 threats and intimidation can be grounds for estoppel.  For

19 instance, in Polk v. Cavin, the Ninth Circuit held that the

20 plaintiff had sufficiently alleged that the defendants threatened

21 and intimated her to estop defendants from raising a statute of

22 limitations in her 42 U.S.C. § 1983 action.  Polk v. Cavin, 447

23 F. App'x 840, 842 (9th Cir. 2011) (quoting Ateeq v. Najor, 15

24 Cal.App.4th 1351, 1356 (1993) ("defendant equitably estopped from

25 asserting statute of limitations as defense where defendant's

26 repeated threats caused plaintiff to delay filing suit")).

27      Contrastingly, Defendant relies on the district court

28 decision in Johnson v. Henderson for the proposition that

retaliatory statements "do not constitute the specific
misinformation about time limits or deliberate or reckless
lulling that courts have held necessary for equitable relief from
the limits."  Johnson v. Henderson, C00-4618EDL, 2001 WL 1112116,
at *8 (N.D. Cal. Sept. 14, 2001) aff'd, 314 F.3d 409 (9th Cir.
2002).  However, on appeal in Johnson, the Ninth Circuit affirmed
the lower court's decision on the ground that no evidence in the
record suggested that the plaintiff relied on her employer's
statements.  Johnson v. Henderson, 314 F.3d 409, 416 (9th Cir.
2002) ("there is no evidence in the record to suggest that the
reason [plaintiff] missed the deadline here—by six months—was
*because of* what the supervisor said to her") (emphasis in the
original).

Accordingly, the Court finds Plaintiff's allegations
regarding retaliatory statements, such as threats and
intimidations, are sufficient to invoke equitable estoppel.

b. Reasonable Reliance

Plaintiff argues that he has pleaded sufficient facts to
show that he relied on Defendant's wrongful acts, which prevented
him from filing suit.  Plaintiff's actual and reasonable reliance
on Defendant's conduct or representations is of critical
importance.  See Naton v. Bank of California, 649 F.2d 691, 696
(9th Cir. 1981).  In Johnson, mentioned above, the Ninth Circuit
held that the plaintiff did not reasonably rely because the
plaintiff testified that she complained to her supervisors
despite the threat that she would be fired if she filed a
complaint.  Johnson, 314 F.3d at 415-16.

In this case, Plaintiff alleges that he was threatened, was

9

1  harassed, and feared being fired.  FAC ¶ 10.  Plaintiff also

2  alleges that he did not notify the railroad of his 1998 on-duty

3  injury and did not file a lawsuit because of these explicit and

4  implicit threats and harassments.  Id.  Therefore, unlike the

5  plaintiff in Johnson, Plaintiff relied on the threats.  Further,

6  Plaintiff's reliance on the threats was reasonable because he was

7  aware of co-employees who were threatened, harassed, and then

8  fired for reporting their on-duty injuries.  Id.

9       Accordingly, the Court finds that Plaintiff has sufficiently

10  alleged facts to show reasonable reliance.

11              c. The Purpose of the Statute of Limitations

12       Defendant argues that the purpose of the statute of

13  limitations is not satisfied by allowing Plaintiff to file eleven

14  years beyond the statute of limitations because the evidence is

15  not fresh and the witnesses may be retired or deceased.  Further,

16  Defendant notes that none of cases cited by Plaintiff has

17  entertained the possibility of permitting a plaintiff to commence

18  an action eleven years after the limitations period has expired.

19       For equitable estoppel, the court considers the extent to

20  which the purposes of the limitations period have been satisfied,

21  notwithstanding the delay in filing.  Naton, 649 F.2d at 696.

22  The purpose of statute of limitations is to "promote justice by

23  preventing surprises through the revival of claims that have been

24  allowed to slumber until evidence has been lost, memories have

25  faded, and witnesses have disappeared."  Burnett v. New York

26  Cent. R. Co., 380 U.S. 424, 428 (1965).

27       Here, there is no surprise because Plaintiff has alleged

28  that Defendant was aware of the injury from 1998, when he was

injured, to 2011, when his manager commented on the injury

report.  FAC at 5-9.  Moreover, whether there are available

witnesses or sufficient evidence should not be decided in a

motion to dismiss.  See Glus v. Brooklyn E. Dist. Terminal, 359

U.S. 231, 235 (1959) ("Whether petitioner can in fact make out a

case calling for application of the doctrine of estoppel must

await trial.")  Therefore, for this motion to dismiss, the Court

finds that the purpose of the statute of limitations is

satisfied.

Accordingly, Plaintiff has alleged sufficient facts to

invoke equitable estoppel.  Further, at this time, the Court need

not address Plaintiff's alternative argument for estoppel based

on misrepresentations of law.

2. Second Cause of Action

Alternatively, Defendant moves to dismiss Plaintiff's second

cause of action  for deprivation of medical care in violation of

49 C.F.R. § 225.33 ("Section 225.33") because Plaintiff has

failed to allege facts sufficient to show Defendant violated

Section 225.33 or facts to show that Defendant's violation of the

statute contributed to the injuries alleged.  Plaintiff argues

that he has alleged sufficient facts showing that Defendant

violated Section 225.33 and that the under FELA, the causation

requirement is lower than the requirement used in typical

personal injury cases.

Section 225.33, in part, provides that, "[e]ach railroad

shall adopt and comply with a written Internal Control Plan."  49

C.F.R. § 225.33.  The plan is meant to ensure "the complete and

accurate reporting of all accidents, incidents, injuries, and

occupational illnesses arising from the operation of the railroad." Id. As part of this plan, "Each railroad shall have procedures to process complaints from any person about the policy . . . being violated, and to impose the appropriate prescribed disciplinary actions on each employee, supervisor, manager, or officer of the railroad found to have violated the policy." Id.

Here, the allegations in the FAC establish the Defendant violated this policy because Defendant's manager threatened to fire Plaintiff, intimidated him, and prevented the treatment of his on-duty injury. Moreover, Plaintiff alleges that Defendant "created an ongoing and continuous environment of harassment, retribution against injured employees." FAC ¶ 10.

However, Plaintiff does not sufficiently allege facts to show that violation of Section 225.33 caused his injury. Under FELA, a plaintiff need only show that Defendant "played any part, even the slightest, in producing the injury." CSX Transp., Inc. v. McBride, 131 S. Ct. 2630, 2643 (2011). Although Plaintiff alleges that Defendant's actions "played a part" in his injury, he provides no facts in support of the allegation. FAC ¶ 16. Therefore, this general allegation is too broad and insufficient to support this claim.

Accordingly, Plaintiff's second claim for violation of 49 C.F.R. § 225.33 is dismissed. Because Plaintiff has not indicated any other facts that he may be able to allege to pursue this cause of action, and he has had two chances to properly plead this claim, further amendment is futile.

1                              III. ORDER

2        For the foregoing reasons, Defendant's Motion to Dismiss is

3   GRANTED in part and DENIED in part.  Defendant's Motion to

4   Dismiss Plaintiff's first and second causes of action as time

5   barred is DENIED.  Defendant's Motion to Dismiss Plaintiff's

6   second cause of action for failure to properly state a claim is

7   GRANTED WITH PREJUDICE.

8        IT IS SO ORDERED.

9   Dated: March 8, 2013

10                                JOHN A. MENDEZ,
                                 UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                   13