1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   BURLEY D. TOMPKINS,                    No. 2:12-CV-1481-CMK

12              Plaintiff,

13         vs.                              MEMORANDUM OPINION AND ORDER

14   UNION PACIFIC RAILROAD
     COMPANY,
15
                Defendant.
16
     _____/
17

18              Plaintiff brings this civil action under the Federal Employers Liability Act, 45

19   U.S.C. §§ 51, et seq.   Pursuant to the written consent of all parties, this case is before the

20   undersigned as the presiding judge for all purposes, including entry of final judgment.  See 28

21   U.S.C. § 636(c).  Pending before the court is defendant's motion for summary adjudication (Doc.

22   53).  The parties appeared for a hearing on May 27, 2015, at 10:00 a.m., before the undersigned

23   in Redding, California.  Anthony S. Petru, Esq., appeared for plaintiff.  Stephanie Quinn, Esq.,

24   / / /

25   / / /

26   / / /

1    appeared for defendant.  After hearing the parties' arguments, the matter was submitted.[1]

2

3                                           **I.  BACKGROUND**

4         This action proceeds on the first amended complaint (Doc. 17).  On the seven

5 claims raised, six remain following the court's March 8, 2013, order (Doc. 22) dismissing

6 plaintiff's second claim for violation of 49 C.F.R. § 225.33 with prejudice.  In the current motion

7 for summary adjudication, defendant seeks judgment as a matter of law on plaintiff's first claim

8 for negligence.  As to this claim, the court recited the following summary in its March 8, 2013,

9 order:

10             Plaintiff alleges that in or about August through October 1998, he
         was working for Defendant at Defendant's Oroville yard near Oroville,

11          California.  During work, a trespasser startled him while he was releasing
         the handbrakes of an open-top gondola car.  As a result, he fell from the

12          railcar and sustained a back injury.
            Plaintiff further alleges that he timely reported his back injury to

13          Defendant's Manager, Marvin Dunn, who harassed, intimidated, and
         threatened Plaintiff in order to discourage and prevent Plaintiff from

14          timely filing an on-duty injury claim and seeking proper medical
         treatment.  In addition, throughout his employment with Defendant,

15          Plaintiff allegedly endured ongoing express and implied threats by railroad
         management to terminate him if he filed an on-duty injury report. . . .

16

17 / / /

18 / / /

19 / / /

20 _____

21        [1]     At the hearing, plaintiff's counsel sought to introduce documents into evidence
which had not previously been made a part of the record.  The day after the hearing, plaintiff's

22 counsel submitted a document entitled "Plaintiff's Supplemental Authorities and Evidence in
Opposition to Union Pacific Railroad Company's Motion for Partial Summary Judgment."

23 Plaintiff's counsel states: "Plaintiff seeks direction from the court as to how best to file these
documents. . . ."  As defendant notes, however, no direction from the court is necessary beyond

24 the procedures set forth in the parties' stipulated protective order (Doc. 52) governing the
documents at issue.  Specifically, the protective order provides that protected documents may

25 only be filed under seal pursuant to a court order under Eastern District of California Local Rule
141.  Because plaintiff has not complied with Local Rule 141 with respect to filing protected

26 documents under seal, the documents referenced in counsel's "Supplemental Authorities" are not
part of the record on the instant motion.

Defendant's argument that plaintiff's first claim for negligence is time-barred was rejected on an equitable estoppel theory.  Specifically, the court concluded:

> • Plaintiff's allegations regarding retaliatory statements, such as threats and intimidations, are sufficient to invoke equitable estoppel.
>
> • Plaintiff has sufficiently alleged facts to show reasonable reliance.
>
> • The purposes of the statute of limitations are satisfied notwithstanding the delay in filing suit.

## II.  STANDARD FOR SUMMARY JUDGMENT/ADJUDICATION

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The standard for summary judgment and summary adjudication is the same.  See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

> Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the

1   allegations or denials of its pleadings but is required to tender evidence of specific facts in the

2   form of affidavits, and/or admissible discovery material, in support of its contention that the

3   dispute exists.  See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11.  The

4   opposing party must demonstrate that the fact in contention is material, i.e., a fact that might

5   affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S.

6   242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630

7   (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury

8   could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433,

9   1436 (9th Cir. 1987).  To demonstrate that an issue is genuine, the opposing party "must do more

10  than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the

11  record taken as a whole could not lead a rational trier of fact to find for the non-moving party,

12  there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  It is

13  sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the

14  parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.

15          In resolving the summary judgment motion, the court examines the pleadings,

16  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

17  any.  See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, see

18  Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed

19  before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587.

20  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

21  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

22  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

23  1987).  Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for

24  the judge, not whether there is literally no evidence, but whether there is any upon which a jury

25  could properly proceed to find a verdict for the party producing it, upon whom the onus of proof

26  is imposed."  Anderson, 477 U.S. at 251.

4

## III.  DISCUSSION

Defendant moves for summary adjudication arguing that the undisputed evidence obtained through discovery now shows that, despite plaintiff's allegations, equitable estoppel does not apply and the claim is time-barred.  According to defendant:

> Plaintiff's claim survived the pleading stage because he pled an estoppel theory, yet after months of discovery, it is clear that Plaintiff's estoppel theory has absolutely no merit.  He admits that he was not aware of any of the alleged intimidation of other employees until after the limitations period had expired.  He knew he had a work-related injury, he knew he had three (3) years to file suit, and he sat on his rights for fourteen (14) years.  These are not the circumstances under which the law protects him from application of the statute of limitations.

Defendant also argues that, even if the statute of limitations does not bar plaintiff's claim, defendant is still entitled to judgment as a matter of law because plaintiff cannot prove the essential elements under FELA.  According to defendant:

> . . .The undisputed facts demonstrate that UPRR acted reasonably to control trespassing on its property through education, training, and police activities by its own police force.  After months of discovery, it is clear that Plaintiff does not have any *competent* evidence that could lead a reasonable jury to conclude that Defendant knew or should have known of a risk of injury to its employees from trespassers in Oroville.  Plaintiff and his "expert" cannot even say that the trespasser got on the train in Oroville and therefore, his anecdotal evidence of an alleged trespasser problem in the Oroville yard carries no weight.  No reasonable jury could conclude that in 1998, UPRR failed to reasonably address known risks to its employees like Plaintiff and failed to provide him with a reasonably safe workplace.

### A.  **Equitable Estoppel**

In his opposition, plaintiff cites Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231, 235 (1959), for the issue of application of equitable estoppel in a FELA case is triable to a jury as of right.  Plaintiff, however, misreads Glus.  In that case, the Supreme Court considered whether a district court properly dismissed a FELA claim as time-barred.  The Court held that the plaintiff's complaint contained sufficient allegations to invoke equitable estoppel and that "[w]hether [the plaintiff] can in fact make out a case calling for application of the

1    doctrine of estoppel must await trial." Id. Thus, in stating that the issue "must await trial," the

2    Court was observing that, where the allegations in the complaint are sufficient, "[s]uch questions

3    [of fact] cannot be decided at this stage [dismissal] of the proceedings." Id. The Court did not

4    specifically hold that where, as defendant argues is the case here, a FELA plaintiff cannot prove

5    the underlying factual issues relating to estoppel, summary judgment would be inappropriate.

6           This reading of Glus is consistent with the Ninth Circuit's holding in Santa Maria

7    v. Pac. Bell, 202 F.3d 1170 (9th Cir. 2000), cited by both parties in this case. In Santa Maria, the

8    district court denied the defendant's motion for summary judgment, rejecting its argument that

9    the plaintiff's EEOC complaint was time barred based on application of the doctrine of equitable

10   estoppel. See id. After a jury returned a verdict in favor of the plaintiff, the defendant appealed.

11   The Ninth Circuit reversed the district court's denial of summary judgment on the equitable

12   estoppel issue, vacated the jury's judgment, and remanded with instructions to enter judgment in

13   favor of the defendant. See id. Thus, a district court may decide on summary judgment that, as a

14   matter of law based on undisputed facts, equitable estoppel does not apply.[2]

15          In the March 8, 2013, order finding that equitable estoppel applied at the pleading

16   stage based on plaintiff's allegations, the court stated:

17                Equitable estoppel focuses on the defendant's affirmative actions
             that prevent a plaintiff from filing a suit. Keenan v. BNSF Ry. Co., C07-
18           130BHS, 2008 WL 2434107, at *6 (W.D. Wash., June 12, 2008). To
             determine whether equitable estoppel applies, courts consider several
19           factors, "such as whether the plaintiff actually relied on the defendant's
             representations, whether such reliance was reasonable, whether there is
20           evidence that the defendant's purpose was improper, whether the
             defendant had actual or constructive knowledge that its conduct was
21           deceptive, and whether the purposes of the statute of limitations have been
             satisfied." Id. (citing Santa Maria v. Pacific Bell, 202 F.3d 1170, 1177
22           (9th Cir. 2000)). Defendant argues that estoppel is not appropriate in this
             case because (a) retaliatory statements are not sufficient for equitable relief
23           from the statute of limitations, (b) the facts alleged to not establish
             Plaintiff's reasonable reliance, and (c) the facts alleged do not show that
24           the purpose of the statue of limitations has been satisfied.

25   _____

26          [2]    Though Santa Maria involved an EEOC claim, there is nothing about a claim
     under FELA which would distinguish the holding from this case.

1    In the current motion, defendant recasts these arguments in light of the evidence

2  obtained through discovery.  Specifically, defendant argues: (1) as a matter of law, threats of

3  retaliation are insufficient to form a basis for equitable estoppel; (2) plaintiff cannot prove that he

4  reasonably relied on any representations by defendant; and (3) plaintiff cannot prove any

5  improper purpose on the part of defendant.

6    1.    Threats of Retaliation

7    This argument has already been rejected by the court.  In the March 8, 2013,

8  order, the court noted two cases in which threats of retaliation were considered on the merits.  In

9  Longo v. Pittsburgh & L.E.R.Co, New York Cent. Sys., 355 F.2d 443, 444 (3d Cir. 1966), the

10 defendant allegedly told the plaintiff that he would lose his job if he filed a suit against the

11 company.  The Third Circuit reversed the district court's dismissal based on the statute of

12 limitations, concluding that the evidentiary record revealed a triable issue of fact on whether the

13 defendant's own conduct precluded application of the statute of limitations.  See id. at 445.

14 Similarly, in George v. Hillman Transp. Co., 340 F. Supp. 296, 299 (W.D. Pa. 1972), the court

15 considered whether the plaintiff's fear of losing her employment could form the basis for

16 equitable estoppel, but concluded that it did not because there was no evidence that her fear was

17 induced by any conduct of the defendant.  Accord Johnson v. Henderson, 314 F.3d 409, 416 (9th

18 Cir. 2002) (holding that "there is no evidence in the record to suggest that the reason [plaintiff]

19 missed the deadline here – by six months – was *because of* what the supervisor said to her").

20    2.    Reasonable Reliance

21    As the cases cited above demonstrate, while threats of retaliation can theoretically

22 form the basis for equitable estoppel, plaintiff must have evidence that he reasonably relied on

23 such threats and, as a result, did not file suit.  In essence, defendant argues in the current motion

24 that plaintiff cannot prove that he was ever threatened with retaliation because the only evidence

25 plaintiff has produced relates to accounts – some of which from times after the limitations period

26 in this case expired – of others who may have received retaliatory threats for submitting an injury

1   report.  In making this argument, defendant relies on excerpts from plaintiff's December 18,

2   2014, deposition.  According to defendant, plaintiff admitted the following: (1) prior to the 1998

3   incident, plaintiff never heard that he would be terminated for turning in an injury report; and

4   (2) the only time plaintiff ever heard of threats of retaliation for turning in an injury report was

5   sometime in 2006 or 2007 – after the 3-year limitations period would have expired.

6          Defendant's reliance on plaintiff's lack of knowledge prior to the 1998 incident of

7   potential retaliation for turning in an injury report is misplaced.  The question is whether threats

8   of retaliation reasonably caused plaintiff not to file suit within the 3-year limitations period.

9   Thus, the relevant timeframe of plaintiff's knowledge extends three years after the injury.

10  Defendant's own brief, as well as plaintiff's deposition, reflect that, just after the 1998 incident,

11  plaintiff was warned by another employee that he could be terminated for turning in an injury

12  report.[3]  A jury could  reasonably infer from this that turning in an injury report could result in

13  retaliatory termination and that plaintiff was aware of this within the timeframe such knowledge

14  could have affected his ability to file suit on time.[4]

15          While plaintiff's statements may be inconsistent, that is a question of the weight

16  to be given plaintiff's testimony, which can only be decided by a jury.

17  / / /

18  / / /

19  / / /

20  _____

21  [3]      The hearsay rule would not apply to exclude this testimony because it would not
    be offered for the truth of the matter stated – that defendant did not did not threaten retaliation –
22  but for the effect the statement had on plaintiff, i.e., that the statement created a reasonable fear
    of retaliation for submitting an injury report.

23  [4]      Defendant unpersuasively argues that estoppel can only apply if the employer
    threatens retaliation for filing a FELA suit, as opposed to simply an injury report.  Defendant,
24  however, cites no authority in support of this distinction and a jury could reasonably infer that, if
    an employer would retaliate for submitting an injury report it would certainly do the same for
25  filing a lawsuit against it.  The court does not accept defendant's interpretation, which would
    allow an employer to escape equitable estoppel  so long as its threats of retaliation are not
26  directed towards filing a formal FELA complaint in district court.

**B.   Liability Under FELA**

Under FELA, a railroad employee may recover for workplace injury resulting from the negligence of the employer railroad.  See 45 U.S.C. § 51.   As an alternative basis for summary adjudication of plaintiff's first claim, defendant argues that, as a matter of law, it was not negligent.   Defendant argues:

> Here, Plaintiff seeks to impose liability on UPRR for the acts of a third party [the trespasser] in startling him.  He seeks to impose a duty on UPRR to not only fence its property, but to control the acts of third parties on property that is not even owned or controlled by Defendant.  Plaintiff's claim fails as a matter of law because no such duty can be imposed, there is no evidence UPRR breached any duty, the incident alleged is not reasonably foreseeable, and no negligence on the part of Defendant was a cause of injury to Plaintiff.

1.   Duty

Defendant argues that it had no duty to prevent trespassing on property it did not control.  Plaintiff, however, alleges that he sustained the 1998 injury after being startled by a trespasser who was on defendant's train located on defendant's Oroville yard.  Defendant has not presented any authority supporting the position that it did not owe a duty to prevent trespassers on its own property.

2.   Foreseeability

Defendant argues that plaintiff's evidence does not go beyond evidence of ambient crime and is insufficient to put defendant on notice.  According to defendant, the best plaintiff can do is show that trespassers were, at times, on railroad property.  Defendant contends that this evidence does not make it foreseeable that a trespasser would hide under a tarp on a train.  Defendant states:

> There is simply no evidence to demonstrate that UPRR failed to provide Plaintiff with a reasonably safe place to work.  Without a history of injuries to persons like Plaintiff from trespassers in the vicinity where Plaintiff says he was hurt, no triable issue of material fact is left for the jury to decide on Plaintiff's First Cause of Action. . . .

/ / /

9

1          In support of its argument, defendant relies on two out-of-circuit cases.  In

2    Thomas v. Consolidated Rail Corp., 971 F. Supp. 620 (D. Mass. 1997), the plaintiff was injured

3    when a trespasser riding an ATV on the railroad's property kicked up rocks causing injury to the

4    plaintiff.  The court concluded that the injury was not foreseeable as a matter of law because

5    there was no evidence of prior incidents of sufficient seriousness to put the defendant on notice.

6    See id. At 622.   In another trespasser case, Leef v. Burlington Northern and Santa Fe Ry. Co., 49

7    P. 36 1196 (Colo. App. 2002), the plaintiff was injured when a trespasser attempted to enter the

8    cab of a locomotive.  See id. At 1197.  Again, the court concluded that the injury was not

9    foreseeable because there was no evidence of "events at or very near the same location of

10   plaintiff's injury. . . ."  See id. at 1199.

11         In his opposition, plaintiff argues:

12         Prior to 1998, Union Pacific had knowledge of trespassers at the
     Oroville yard because they had reports of incidents before Plaintiff's
13   injury. (UF 35).  Plaintiff's co-worker and later manager, Eric Bennett,
     recalled trespassers at Oroville yard. (UF 36, 86).  Plaintiff's manager
14   Mark Dunn admitted trespassers were a part of what went on in the
     railroad yard and could have been present in Oroville.  (UF 37).  Dunn
15   further admitted there was a homeless camp on the east end of the yard.
     (UF 37).  Additionally, Plaintiff had heard employees complain about
16   trespassers.  (UF 7).  It was common to find trespassers on locomotives
     according to Dunn.  (UF 38).  In fact, Union Pacific's expert witness
17   George Slaats admitted that there were approximately 24 documents
     incidents of trespassers in the Oroville yard in 1996 and another 14 in
18   1997-1998 prior to Plaintiff's injury.  (UF 41). . . .

19         While plaintiff's evidence creates a material dispute as to whether trespassers

20   were ever present at the Oroville yard (most certainly there were), the mere existence of

21   trespassers without more connection to the 1998 incident – such as evidence that trespassers had

22   been found hidden on trains – is insufficient as a matter of law because plaintiff's injury would

23   not be foreseeable.  Plaintiff states that, according to Dunn, it was common to find trespassers on

24   locomotives.  Plaintiff, however, only cites his own deposition testimony recalling what Dunn

25   had said.  Because the Dunn's out-of-court statement is being offered for the truth of the matter

26   stated – that trespassers were common on locomotives – this evidence is barred by the hearsay

1  rule.  Plaintiff has produced no admissible evidence of specific incidents similar to the incident
2  in 1998 where a trespasser hid on a train.

3          In light of the absence of any evidence to establish that plaintiff's injury was
4  reasonably foreseeable, the court concludes that defendant is entitled to summary adjudication on
5  plaintiff's first claim for negligence under FELA.

6

7                              **IV.  CONCLUSION**

8          Accordingly, IT IS HEREBY ORDERED that defendant's motion for summary
9  adjudication (Doc. 53) is granted.

10

11  DATED:  June 24, 2015

12                                        _____
13                                        **CRAIG M. KELLISON**
                                          UNITED STATES MAGISTRATE JUDGE
14

15

16

17

18

19

20

21

22

23

24

25

26